## HILLSBOROUGH, OCTOBER TERM, 1820.

### SAMUEL GREELY *vs.* DAVID STEELE.

Where there existed in a town only one right of land belonging to a person by the name of *Ray*; and that right was sold for taxes under the description of both the *Christian* and the *Christopher Ray* right, but was described in the conveyance as the right which had been owned by *Christopher Ray*, when in fact the former owner was *Christian Ray*, the title was still held to pass.

THIS was an action of covenant, founded on a deed from the defendant to the plaintiff, made January 11th, 1804; and which deed contained the usual covenants, and purported to convey the right of land originally belonging to *Christopher Ray*, in the town of Harwick, in the state of Vermont. The breaches assigned were of the covenants of seisin, and of lawful right to convey.

The defendant pleaded, that he was seized, &c.; on which, issue being joined, he produced, at the trial here, October term, 1819, the following evidence. First, a copy of the charter of Harwick, dated August 28th, A. D. 1761, in which there was only one grantee of the name of *Ray*, and he was described by the name of *Christian Ray.*

It further appeared, that no person of the name of *Ray* had ever been known to claim this right, nor was it understood who the grantee was, or where he lived.

On the 10th of November, 1797, the legislature of Vermont passed an act, " assessing a tax of one cent on each " acre of land in the state, for the support of government," &c.   At that time, the *Ray* right, with many others in Harwick, was undrawn and unlocated.   The constables in the several towns were empowered to collect the tax; and one

*Peleg*, being then in that office in Harwick, duly notified, and on the 20th of June, 1798, sold for $3 18, a right under the description of the *Christopher Ray* right. It was purchased by *Gideon Tabor*, and at an adjournment of the sale on the 7th July, 1798, a right was again sold, for the same sum, to the said *Tabor*, but was described as the *Christian Ray* right. Only one sum of $3, 18 was paid by *Tabor*, and only one deed executed by the collector of the *Ray* right, and in that it was described as the right, of which *Christopher Ray* was original proprietor. *Tabor*, and his intermediate grantees down to the defendant, all, save one, who described it as the *Christian Ray* right, conveyed it under the same terms as the defendant used in his deed to the plaintiff.

In October, A. D. 1807, the proprietors of Harwick duly made partition, and in their proceedings, called this the right of *Christian Ray*. Neither the plaintiff, nor his grantees have ever been disturbed in the enjoyment of this right, by any person claiming under *Christian* or *Christopher Ray*.

But it did appear on the part of the plaintiff, that in A. D. 1796, a deed by some collector had been made of *Christian Ray's* right for payment of the taxes, and in A.D. 1809, that another deed of it had been executed by some one, who was not shown to have either title or possession of the land.

On these facts it was agreed, that judgment should be entered according to the opinion of the court.

*French* and *Atherton*, counsel for the plaintiff.

*Smith*, for the defendant.

WOODBURY, J. In this case the covenant of seisin is not broken, if the defendant, in January, 1804, which is the date of his deed, had either title or possession of the land described. 1 *N. H. Rep.* 178.—8 *Cran.* 232.—14 *John.* 254.—2 *Mass.Rep.* 439.—4 *ditto* 408.

But, as it is probable from the evidence, that the *Ray* right in Harwick was then and long afterwards uncultivated, the defendant has shown no actual possession, and consequently must rely on his title.

Before the examination of that title, it may be proper to remark, that the deeds of this right in A. D. 1796, and in

A. D. 1809, do not prove a title in any other person; because the defendant claims under a sale for taxes in A. D. 1798; and, therefore, whoever may have owned it in A. D. 1790, it passed, by the sale of A. D. 1798, to the defendant's grantors, if the description of it in the several conveyances has not been insufficient. The other deed of A. D. 1809 was from a person, who was not proved to have either title or possession; and consequently is not evidence to impair the rights of the defendant.

The question then recurs, whether the defendant has shown in himself a legal title to the *Ray* right. We take it for granted, under the evidence and admissions at the trial, that only one *Ray* right existed in Harwick; that the *Ray* right was duly taxed and sold in A. D. 1798; that the description of it in the collector's deed was correct exepting the christian name of *Ray*, and that whatever title was acquired under that deed passed by subsequent conveyances to the defendant. The true enquiry, then, is not, whether a deed becomes void, when a mistake is made in the name of either party to the deed. For here the constable, as agent for the public, was one party, and the original grantor of the defendant the other party; and both of their names are correctly inserted. But the true inquiry is whether, in the description of premises, a mistake as to the christian name of a former owner will avoid the deed.

From an inspection of the charter of Harwick, it is highly probable, that the name of the former owner of this right was *Christian Ray*. But, being written illegibly and abbreviated, the constable may well have entertained doubts concerning the name, and, therefore, *abundantia cautelæ*, appears to have sold the right under the names of both *Christian* and *Christopher Ray*. There was only one *Ray* right in the town; the constable received only one price or payment; the sale was to only one person; and only one deed of a *Ray* right was executed. Yet in that deed he thought best to describe it as the right of *Christopher*, instead of *Christian Ray*. In this he now appears to have erred.—

(1) 13 John.
486.

But such mistakes are not unfrequent;(1) and in respect to them the law seems well settled.

In the description of premises conveyed, if, says Lord *Bacon*,(1) there be introduced into the deed " a circumstance " mistaken and false, it will not frustrate the grant of partic- " ulars, sufficiently once ascertained."(2)   Here the right is sufficiently ascertained by its being the *Ray* right, and the only *Ray* right in the town of Harwick.   Hence the mistaken circumstance of the christian name of *Ray*, ought not to " frustrate the grant."

In *Hatch et al. vs. Hatch*,(3) *Sewall, J.* remarked, that the alteration of *Joshua* to *Joseph Latham*, in the description of land, where *Joshua* was inserted by mistake, did not defeat the deed.   This unquestionably was on the ground of the immatereality of the alteration; because the land would pass notwithstanding the mistake.   But a case, directly in point, is *Wyndham vs. Wyndham*,(4) the principles of which without reference are detailed by *Parsons, C. J.*, in *Worthington et al. Ex'rs vs. Hyler et al.*(5)   " Thus, if a man " convey his house in *D.* which was formerly *R. C's.* when " it was not *R. C's.* but *T. C's.* the house in *D.* shall pass, if " the grantor had but one house in *D.*"   *Vide etiam*, 5 *East* 7, 9.—8 *ditto*, 103.—*Cr. Cha.* 473.—1 *Maul. & Selw.* 299.— *Phil. Ev.* 412.—*Vin. Ab. Grant's R.* 3.—*Hob.* 171.†

*Judgment for the defendant.*

Greely
*vs.*
Steele.

(1) Maxims 13.
(2) Plow. 191. —Hob. 171.— 7 John. 217*

(3) 9 Mass. Rep. 311–2.

(4) Dyer 376.

(5) 4 Mass. Rep. 205.

---

* 18 John. 79, 81, Jackson vs. Loomis.
† 18 John. 80, Jackson vs. Root & H. Jackson vs. Loomis ; 108, Jackson vs. Ransom.— 19 John. 449, Loomis vs. Jackson.